*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JS,

Petitioner-Appellee,

v

AS,

Respondent-Appellant.

UNPUBLISHED
September 15, 2025
11:30 AM

No. 371393
Eaton Circuit Court
LC No. 2024-000001-PP

Before: WALLACE, P.J., and RIORDAN and REDFORD, JJ.

PER CURIAM.

Respondent, AS, appeals as of right the trial court's order denying his motion to terminate the ex parte personal protection order ("PPO") entered against him. The PPO was obtained by respondent's wife, petitioner, JS, after an incident involving domestic violence on a family vacation. On appeal, respondent argues the trial court abused its discretion by upholding the PPO because no credible evidence supported that respondent may commit one of the acts listed in MCL 600.2950(1). We conclude respondent's argument is without merit and affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This appeal arises out of an ex parte PPO that was granted to petitioner against respondent on January 2, 2024. At the time the PPO was issued, petitioner and respondent had been married for 11 years and had a son together. Petitioner also had a 15-year-old son from a previous relationship. Petitioner sought a PPO after an incident that occurred on a family vacation in the U.S. Virgin Islands in December 2023. According to petitioner, respondent physically assaulted her and her 15-year-old son. After a night out at bars, the couple got into an argument on the way back to their vacation rental. During the argument, respondent threw petitioner on the ground, strangled her, and bit her on the tip of her nose. The 15-year-old son attempted to intervene, but respondent placed him in a headlock and punched him in the face several times. After police officers intervened, petitioner and her son went to the hospital for treatment. The son suffered a concussion and a nasal fracture and needed surgery. Petitioner also needed surgery to repair her nasal valve and to install cartilage implants. After returning to Michigan, petitioner obtained an ex parte PPO and sought safety at Michigan State University's Safe Place Shelter.

-1-

Respondent moved to terminate the PPO. At an evidentiary hearing on the motion to terminate, respondent denied that he attacked petitioner and her son. He conceded that he bit petitioner on the nose, but testified that he only acted in self-defense after petitioner attacked him. The trial court denied the motion, finding that the PPO was justified because there was cause to believe that respondent had left petitioner with a reasonable apprehension of violence. This appeal followed.

## II. STANDARD OF REVIEW

We review the trial court's decision to grant or deny a PPO, including a decision to terminate a PPO, for an abuse of discretion. *CAJ v KDT*, 339 Mich App 459, 463; 984 NW2d 504 (2021). "An abuse of discretion occurs when the court's decision falls outside the range of principled outcomes." *Id*. at 463-464 (quotation marks and citation omitted). The trial court's underlying findings of fact are reviewed for clear error. *Id*. at 464. "The clear-error standard requires us to give deference to the lower court and find clear error only if we are nevertheless left with the definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted). Moreover, this Court must give due regard "to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *SP v BEK*, 339 Mich App 171, 176; 981 NW2d 500 (2021) (quotation marks and citation omitted); see also MCR 2.613(C).

## III. ANALYSIS

Respondent argues the trial court abused its discretion by upholding the PPO because no credible evidence supported its finding that there was reasonable cause to believe respondent may commit one of the acts listed in MCL 600.2950(1). We disagree.

Under MCL 600.2950(4), a trial court is required to issue a PPO "if the court determines that there is reasonable cause to believe that the individual to be restrained or enjoined may commit 1 or more of the acts listed in [MCL 600.2950(1)]." The acts listed in MCL 600.2950 include but are not limited to "[a]ssaulting, attacking, beating, molesting, or wounding a named individual" and "[a]ny other specific act or conduct that imposes upon or interferes with personal liberty or that causes a reasonable apprehension of violence." MCL 600.2950(b) and (*l*). Additionally:

> A court shall issue an ex parte personal protection order without written or oral notice to the individual restrained or enjoined or his or her attorney if it clearly appears from specific facts shown by a verified complaint, written motion, or affidavit that immediate and irreparable injury, loss, or damage will result from the delay required to effectuate notice or that the notice will itself precipitate adverse action before a personal protection order can be issued." [MCL 600.2950(12).]

"The petitioner bears the burden of establishing reasonable cause for issuance of a PPO and of establishing a justification for the continuance of a PPO at a hearing on the respondent's motion to terminate the PPO." *Hayford v Hayford*, 279 Mich App 324, 326; 760 NW2d 503 (2008). "The trial court must consider the testimony, documents, and other evidence proffered and whether the respondent had previously engaged in the listed acts." *Id*.; see also MCL 600.2950(4). "[T]he court must make a positive finding of prohibited behavior by the respondent

-2-

before issuing a PPO." *Kampf v Kampf*, 237 Mich App 377, 386; 603 NW2d 295 (1999). Importantly, under MCL 600.2950(4), petitioner was not required to show that respondent actually committed one of the acts listed in MCL 600.2950(1), only that there was reasonable cause to believe that he might commit one of the acts. See *SP*, 339 Mich App at 187.

In this case, respondent argues the trial court abused its discretion by declining to set aside the PPO issued against him on the basis that it was not supported by credible evidence. At the evidentiary hearing, petitioner testified that respondent physically assaulted her and her 15-year-old son on a family vacation in the U.S. Virgin Islands. Petitioner testified that respondent threw her onto the floor and pinned her against the wall during an argument. While pinned to the wall, respondent strangled her and bit her on the nose. Petitioner admitted to biting respondent and otherwise fighting back. Petitioner's 15-year-old son attempted to intervene, but respondent placed him in a headlock and punched him several times in the face. Petitioner had photographs of the injuries on her and her son's faces from the incident admitted at the hearing. Petitioner acknowledged that she continued to see respondent after the incident, but testified that she did so to make respondent believe everything was normal and so he would not hurt her or her children. Accordingly, contrary to respondent's assertion, testimony was provided at the evidentiary hearing establishing reasonable cause to believe that respondent may commit one or more of the acts listed in MCL 600.2950(1), such as causing a reasonable apprehension of violence, MCL 600.2950(1)(*l*).

Respondent argues that petitioner's allegations were not credible. In support of this argument, respondent argues that petitioner continued to see respondent after returning from the family vacation, which suggests that she did not fear him. Respondent also points to his own testimony at the hearing in which he conceded that he bit petitioner on the nose, but testified that he only bit her in self-defense and did not otherwise attack petitioner and her son. He likewise relies on the photographic evidence he provided, including photographs showing bruises on his body that he alleged he sustained from the incident.

The trial court expressly found petitioner's testimony and fearfulness credible. The trial court found that the incident occurred as petitioner testified, noting that both her and her son were injured and no other explanation was provided for the bruising petitioner's son sustained. In turn, the trial court found that respondent was not credible, relying in part on respondent's evasive and argumentative conduct during the hearing. Additionally, the trial court noted that the photographs of bruises on respondent's body appeared to be in different stages of healing, which suggested they may have been sustained in an altercation respondent got in with a stranger before the family vacation. We defer to the trial court regarding the weight of the evidence and credibility of the witnesses that appear before it. See MCR 2.613(C). Likewise, we do not believe that the trial court improperly placed itself in the role of an expert by commenting on the bruises on respondent's body. In fact, the trial court noted that it was not a bruising expert, but was making a common-sense observation based on the photographs and evidence presented at the hearing. Respondent also argues that petitioner did not provide police reports or medical records to support her testimony. However, MCL 600.2950 expressly provides that "[a] court shall not refuse to issue a [PPO] solely because of the absence of . . . [a] police report" or "[a] medical report." MCL 600.2950(6)(a) and (b).

Respondent next argues the conduct alleged by petitioner was a one-time incident and there was no likelihood that it would happen again. As previously noted, petitioner was not required to

-3-

show that respondent actually committed one of the acts listed in MCL 600.2950(1), only that there was reasonable cause to believe that he might commit one of the acts. See *SP*, 339 Mich App at 187. Respondent acted in a manner that not only aroused fear, but also sent petitioner and her son to the hospital for their injuries. The fact that respondent had not previously attacked petitioner and her son or attacked them after the incident does not dispel that petitioner had a reasonable apprehension of violence.

Finally, respondent argues the fact that petitioner previously sought a PPO against respondent in December 2022 before initiating divorce proceedings and later voluntarily dismissed the divorce case supports that she was not fearful of respondent. Respondent further argues that petitioner agreed to share joint physical custody of their child during those divorce proceedings, which indicated she did not fear for her children's safety either. However, the decisions to seek the first PPO, divorce proceedings, and to share joint physical custody with respondent all occurred before the assault in December 2023. At the hearing, the trial court noted that these previous incidents had limited weight in relation to its decision to continue the PPO. Again, we defer to the trial court regarding the weight of evidence. See MCR 2.613(C).

Considering the evidence presented at the evidentiary hearing and giving due regard to the trial court's weighing of the evidence, we conclude the trial court did not abuse its discretion by denying respondent's motion to dismiss the PPO.

Affirmed.

/s/ Randy J. Wallace
/s/ Michael J. Riordan
/s/ James Robert Redford

-4-